WILLARD PHILLIPS, Judge, &c. *vs.* JOHN G. ROGERS & others.

An estate in fee, or in tail, defeasible upon a contingency, is liable to be taken in execution by a creditor of the tenant, and held until the happening of the contingency.

An administrator who takes real estate on execution to satisfy a debt due to his intestate, and receives payment therefor, on its being taken from him for public uses, is estopped to deny that the estate was liable to be levied on, or that he took any thing therein by the levy.

When real estate, on which an administrator has made a levy to satisfy a judgment recovered on a debt due to his intestate, is taken for public uses, after the time allowed to the judgment debtor to redeem it has expired, and the money, awarded as a compensation therefor, is received by the administrator, the sureties on his administration bond are liable for his default in regard to that money.

The court will not sustain a bill in equity, brought on the Rev. Sts. c. 70, § 16, against the devisees and legatees of a surety on an administration bond, whose estate has been settled, to recover for the default of the administrator for whom he was surety, if the claim is a stale one, and the claimant has been guilty of great negligence, laches and delay, although the claim is not, strictly speaking barred by the statute of limitations

SHAW, C. J.* This is a bill in equity brought by the judge of probate, in his official capacity, against the devisees and legatees of Daniel Dennison Rogers, upon a bond executed in 1821, by John G. Rogers, as principal, and Daniel D. Rogers and Abigail Hall, as sureties, in the penalty of $10,000, conditioned for the faithful performance by the said John G. Rogers, the principal, of the duty of administrator *de bonis non* of Ebenezer Hancock, to which office, as the bond recites, he had then been appointed. The suit is brought against the said devisees and legatees upon the ground that no cause of action accrued to the judge of probate, on this bond, until within one year next before the commencement of the suit; and that in the mean time all remedy against the administrator had been barred by the statute of limitations. Rev. Sts. *c.* 66, § 5; *c.* 70, §§ 13 – 16. By the section last cited, if there be more than one person liable, under the previous provisions, in different proportions, the plaintiff may proceed by bill in equity. *Wood* v. *Leland*, 22 Pick. 503. Upon these authorities, the court are of opinion that they have jurisdiction in equity, in a case like the present.

The suit is brought on the probate bond, in the name of the judge of probate, who was merely a trustee for the parties interested, in order to recover a balance alleged to be due from the administrator on his probate account, for which, it is alleged, the sureties on the probate bond are liable.

The first objection to the plaintiff's recovery is, that the balance of the demand now claimed will appear, from an examination of the accounts, to depend upon the credit given by the administrator, in his probate account, of $15,361·94, as the proceeds of the Merchants Row estate, levied on and set off on execution to him, in his capacity of administrator, as the estate of John Hancock, for a debt due from him to the intestate.

It is contended that the administrator ought not to be charged with the proceeds of that real estate, levied on to

---

* *Hubbard*, J. did not sit in this case.

satisfy the debt due from John Hancock to the intestate, because the estate was not liable to be levied upon, as the estate of John Hancock ; that under the will of his grandmother, Mrs. Cushing, he took a contingent and defeasible estate only, an executory devise determinable on his dying without issue, in the life time of his brother Thomas Hancock. To this, we think, there are several answers. The *first* is, that by the terms of Mrs. Cushing's will, this was an estate tail with cross remainders ; and that by *St.* 1791, *c* 60, § 2, which was then in force, it was expressly liable for the debts of the tenant in tail. But supposing it an executory devise, defeasible upon the contingency of his dying without issue *living at the time of his decease*, still he had a present vested estate, in fee or in tail, defeasible upon a contingency not likely to happen ; which never did happen ; and this was real estate liable to be taken on execution and held by the creditor, or his assigns, until the happening of the contingency. *Secondly.* Having taken the estate in execution, as one liable to the levy, and which was never redeemed ; having received the money for it from the city, as such administrator ; he would be estopped, in the settlement of his probate account, to deny that he took any thing by the levy. It would be his duty to account for it ; a duty for the performance of which the bond was a collateral security.

This estate was afterwards taken by the city, under the authority of a special act of legislation, (*St.* 1823, *c.* 148,) to widen and enlarge Faneuil Hall Market ; and the sum allowed therefor by the city was received by the administrator, and credited in his account. It is contended that this ought not to be credited in general probate account, or, if chargeable to him at all, it is a charge against him personally, for which his sureties were not liable. The argument is, that it ought not to bind the sureties, because it was a new obligation, cast upon the administrator, not subsisting when the bond was given. We think that this furnished no defence to the sureties. The condition of the bond was, in general terms, to perform the duties of administrator. One

of these duties was, to collect debts due to the estate, and account for the proceeds; and one of the modes then existing by law, was to have land set off to him, of which he became seized. But further; such duties may be regulated by new laws, without impairing the obligation of the bond. If it were held otherwise, any change in the law. respecting the settlement of estates, by varying the duties of an executor or administrator, would vacate the bond, so far as the sureties are concerned; and for any other purpose than binding the sureties, the bond is useless.

But we have not thought it necessary to go more fully into this part of the case, because we think the decision of the cause does not depend on it.

Another ground of defence is, that the claim is barred by the statute of limitations; or if, strictly speaking, not barred by the statute, that it is a stale claim, coming within the policy of the statute of limitations, excluded by analogy to the statute, and one which a court of equity will not sustain.

In order duly to appreciate these grounds of defence, it will be necessary to consider who are the parties, what are the principles on which a claim of this kind is founded, and what are the rules of law and the principles of equity applicable to it.

It appears, as well by the indorsement of the bill in equity, as by the facts of the case, that the suit is brought for the benefit of John Hancock, and that he is now the only party interested. He and his mother and brother Thomas, after payment of the debts, were the only persons beneficially interested in the estate of Ebenezer Hancock, the intestate; and it appears that the mother has long since deceased, and that Thomas, the brother, died intestate and without issue, leaving John his sole heir at law.

In order to recover against the heirs, devisees, and legatees of Daniel D. Rogers, it must appear that a cause of action has accrued against the estate of the deceased; that it did not accrue until the four years' limitation of suits against executors and administrators had passed; and that it was

prosecuted within one year after such cause of action ac-
crued. This last unusually short limitation, we think, very
significantly discloses the policy of the law on this subject.
The first great object of the law is, to make the property of
a deceased person, real and personal, assets for the payment
of his debts. For this purpose, ample time is given to cred-
itors to make their claims, and ample means to executors and
administrators to meet them. But it may occur that unex-
pected claims of damages may arise, after an estate is settled,
from old covenants running with land, from outstanding
official bonds, and from other causes, the grounds of which
could not have been foreseen. The law, following out its
general intent to make all the property of a deceased person
applicable to the payment of debts, before it passes to benefi-
ciaries, who are mere volunteers, permits a creditor, so situ-
ated, to follow the property into the hands of heirs and dis-
tributees, devisees and legatees. For this, however, the
shortest practicable time is allowed; barely enough to consult
counsel, take proofs, and commence a suit. And this is
founded on the most obvious considerations of reason and
justice. Property thus received is regarded by the takers as
their own, is treated as such, invested in trade, expended for
education, and otherwise appropriated and disposed of. Res-
toration, under these circumstances, after any considerable
lapse of time, often operates as a hardship upon those who
have lived, conducted, and incurred expenses, prudently it
may be, as they were situated, but which they would not
have done, but for the property thus supposed to be their
own. It is with reference to these principles that the law is
to be applied.

We are strongly inclined to the opinion that the suit is
barred by the statute of limitations. It appears by the facts
agreed, that, in September 1829, the administrator settled an
account, charging himself with a balance of $7842·66 of
personal estate, besides the large amount of real estate which
had been levied on as the estate of John Hancock, and which
he then held. A decree was then passed, directing, under the

special circumstances, that this balance should be paid over, in full, to Thomas Hancock, on the ground that John was still a debtor to the estate, in a large amount. It was afterwards held that this decree was irregular in directing the whole to be paid by the administrator to Thomas Hancock, as an attempt to set off John's debt against his distributive share. This was reversed, long afterwards, by the judge of probate, and that reversal was confirmed in this court. See 19 Pick. 167. This, however, did not affect the decision in any other respect, and the decree was not appealed from.

But by the same decree, the judge of probate directed that, if the balance was not paid, the bond should be delivered to the guardian of Thomas Hancock, to be put in suit. The facts find that, immediately after this decree, a demand was made upon the administrator, for the balance, which he did not pay, and he then declared his inability to do so. No appeal was taken from this decree. It stood in force many years, and until after the resignation of the administrator. This demand and refusal was *prima facie* a breach of the bond, at law; and as the administration on the estate of Daniel D. Rogers had then closed, this right of action was limited to one year. After that time, the action was barred by the lapse of one year. Rev. Sts. c. 70, § 14.

This is the view which the present claimant, John Hancock, seems to have taken of it; because, in a subsequent controversy between the guardian of his brother and himself, he claimed to charge the guardian for this balance, on the ground that, by neglecting seasonably to sue the bond, all claims against the heirs and devisees of the estate of Daniel D. Rogers, the only solvent surety on the bond, were wholly discharged. This is not to be regarded as an estoppel; but it indicates the view which he himself took of the matter, some years before this suit was brought.

But whether or not the suit is strictly barred at law by the one year limitation, we are satisfied that it is a claim which, under the circumstances, cannot be enforced in a court of equity. The reason, perhaps, why statutes of limitation are

not, strictly speaking, recognized and allowed in courts of equity, is, that in terms they are commonly limitations made in refer-ence to certain legal remedies, and in terms apply to these only. But a court of equity acts in obedience to the spirit of statutes of limitation, and rather adopts the reason and principles on which, as positive rules, they are founded, than the rules themselves. A court of equity will, therefore, recognize a defence as a good one, which is founded on the lapse of time and the staleness of the claim, when no statute of limitations directly governs the case. It acts upon the doctrine of dis-couraging, for the peace of society, antiquated demands, by refusing to interfere when there has been gross laches or long acquiescence. *Smith* v. *Clay,* Amb. 645. 2 Story on Eq. §§ 1520, 1521. Mitf. Pl. (3d ed.) 221.

This, on the face of it, is an antiquated claim. The bond, on which the bill attempts to charge the devisees and legatees of a surety, was made almost thirty years ago. The other surety was the mother of the principal obligor, long since deceased, and to whom the principal was the only heir. The settlement of the estate of Daniel D. Rogers closed in 1829, nearly twenty years ago ; and this bill attempts to follow the property into the hands of children and grandchildren.

The plaintiff attempts to account for this from the peculiar circumstances of the case, and to show that no cause of action, on which he could proceed, arose until 1844, when the administrator, long after his discharge from the trust, settled an account; and that this suit was commenced within one year. The question is, whether these reasons are satisfactory.

In the first place, it is to be considered that the question does not turn, as it might in a suit at law upon a penal bond, on the point whether an action would lie, where the right is made to depend upon some formal act, such as making a demand. When a contracting party has undertaken to do a collateral act on demand, an action at law would not lie until demand made ; the cause of action thus accrues, and then the statute of limitations begins to run. But where it depends upon the party claiming to make such demand, he cannot be

permitted to sleep over his rights, by postponing his demand for a long time, to the manifest damage of others. If the demand is not made in reasonable time, the claim must be considered stale, and no relief will be granted in a court of equity. *Codman* v. *Rogers*, 10 Pick. 120. So, in a more recent case, like the present — a suit against an heir, after administration closed — it was said, that " it is not enough that a mere formal right of action accrues, by an act done after the four years. If the demand might have been made, and thereupon an action would have accrued before the expiration of the four years, it might have been brought against the administrator, and will not lie against the heir." *Hall* v. *Bumstead*, 20 Pick. 7.

There were circumstances in the present case which should have bound the parties, ultimately interested in this estate, to somewhat extraordinary diligence. The estate was originally represented insolvent; a commission was taken out, and debts proved under it. But the principal part of these debts was due from the intestate, as surety for his son John, the present claimant; and by a suit of the administrator against John, a very large judgment was recovered, and in some part satisfied. A portion of this property was afterwards taken by the city, to enlarge Faneuil Hall Market, by which a large sum of money was unexpectedly received by the administrator, and credited in his account. The whole account was very large, amounting to eighty or ninety thousand dollars, and the credit already mentioned was over $15,000. This was in 1825; soon after which he settled an account. The estate was then substantially settled, and there was no good reason why a decree of distribution was not then prayed for by the heirs, including John.

On the 10th of July 1826, he settled an account, recapitulating his former accounts, and charging himself with a balance of real and personal property. No reason appears why a decree of distribution was not prayed for at that time. It is stated as a fact, that Mrs. Hancock, the mother, made a claim for one third as personal estate ; that after her decease,

the claim was renewed by her executor ; and that this claim was not decided till March 1829. See 8 Pick. 29. It does not appear at what time this claim of Mrs. Hancock was made ; but probably it was soon after the settlement of the account.

But it does not appear that John Hancock, for himself, made any claim for distribution. On the contrary, it appears from the case of *Hancock* v. *Minot,* 8 Pick. 29, that the appeal from the allowance to the widow was taken wholly by Thomas Hancock, by his guardian. But we think, if he chose to lie by, and made no prayer for a decree of distribution, the controversy between other parties is scarcely an excuse for him to do nothing. *Non constat* but, if he and his brother had prayed distribution, that a decree might have been passed allowing them their respective undisputed third parts, leaving the third claimed by the mother in the hands of the administrator, till the controversy was settled. The administrator was then solvent, and the strong probability is, that two thirds of the amount in his hands might then have been realized without difficulty.

It may perhaps be said that John Hancock, then being a large debtor to the estate, might suppose that he had no right by law to claim distribution, and therefore was bound to wait for the termination of the controversy between other parties. But his ignorance of the law, on which his rights depended, ought not, at this late day, to be put forth as the ground of charging others in equity for his benefit.

But again ; supposing that was not such an acquiescence as ought to affect the present plaintiff, we think the proceedings in 1829 were of a more striking character. In March 1829, the claim of Mrs. Hancock was settled against her. The administrator had already settled his account, showing himself chargeable with a balance, and nothing remained but to pray distribution. On the 20th of April 1829, a petition was filed by the guardian of Thomas Hancock, praying that the whole of the estate in the hands of the administrator might be assigned to him, on the ground of the debt still due from

John, the co-heir, to an equal amount. Upon this petition, the whole was assigned to John by a decree, which was afterwards decided to be irregular and void. From this decree John Hancock took no appeal. Had he done so, the presumption is, that the decree would have been set right, and the estate promptly settled.

One fact, under the particular circumstances of the present case, comes to be important. It appears that early in April 1829, John G. Rogers, the administrator and principal obligor in the bond, failed and stopped payment; and, as it afterwards appeared, had suffered great losses, and was insolvent. This was after the judgment of the court, in the case of *Hancock* v. *Minot*, in which it was decided that the widow took no share in the estate, as personal, and that the whole distributive share belonged to John and Thomas.

The settlement of the estate of Daniel D. Rogers closed on the 4th of April 1829. It does not distinctly appear whether this was before or after the failure of Rogers. If the parties interested in this bond intended to look to the estate of Rogers, as a surety, it would have been proper, though not perhaps legally necessary to their right to maintain an action, but an act of due diligence, to give notice of such claim, pursuant to the provisions of *St.* 1788, *c.* 66, § 4, then in force, in order that funds might be reserved to meet it.

But it is, perhaps, not necessary to follow minutely the history of the settlement of this estate, through its various stages, to the present time, though many other circumstances, not enumerated, have weight in leading us to the same conclusion; which is, that there has been extraordinary delay and negligence on the part of the only party now interested, in bringing the settlement to a close. During the whole time, from the taking out of this administration till 1842, John Hancock took no active measures to obtain a settlement of the administrator's account and a distribution of the estate. After the several accounts of 1827 and 1829, he put in no aim for a distribution. It is true he was then a debtor to

the estate ; but that, by law, was no bar to his claim for a distribution. In 1829, he simply filed an answer to the petition of his brother's guardian, praying that a distribution might be made according to law ; but he took no appeal from the decree.

Without relying upon any one of these circumstances as alone sufficient to bar the suit, we are of opinion that, taken together, they indicate great laches and negligence on the part of John Hancock, who, from being originally a large debtor to the estate, and from whose default in payment the perplexities and difficulties attending the settlement of this estate have mainly arisen, has now, by change of circumstances, become the sole party interested in the funds. And if there has been no formal breach of the bond, upon which a right of action at law accrued before 1844, and so the statute of limitations is not an absolute bar to the suit, yet, on the ground of such negligence and delay during this great length of time, it would be contrary to the principles of equity to sustain such a demand against the devisees and legatees of a surety, whose estate has been long settled, and that the suit cannot be maintained.

*Bill dismissed.*

*Bartlett & Hancock*, for the plaintiff.
*Aylwin & Paine*, for the defendants.